IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LAURA HETU,<br><br>           Plaintiff,<br><br>  vs.<br><br>CHARTER COMMUNICATIONS, LLC, and AMY LANE, and John Does 1-10,<br><br>           Defendants. | CV-14-115-BLG-SPW-CSO<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I.    <u>INTRODUCTION</u>

Plaintiff Laura Hetu's ("Hetu") Amended Complaint asserts the following claims against the Defendants, Charter Communications ("Charter"), Amy Lane ("Lane"), and John Does 1-10:

> Count One—Breach of Express and Implied Contract & Breach of the Covenant of Good Faith and Fair Dealing
> Count Two—Deceit
> Count Three—Fraud
> Count Four— Wrongful Denial of Family and Medical Leave Act ("FMLA") Leave
> Count Five— Negligence

*See ECF 14.*[1]  Count Four is based on federal law; the remaining counts are based on state law.

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

Now pending is Charter's Renewed Motion for Partial Dismissal (*ECF 15*). Lane joins in the motion (*ECF 27*). Having reviewed the parties' arguments and the applicable law, the Court recommends as follows.

## II. BACKGROUND

Hetu first brought this action in state court, alleging defamation and wrongful termination in addition to claims identified above. *See Complaint, ECF 1-1.* After the action was removed to this Court, Hetu was allowed to file an Amended Complaint. *See ECF 13, 14.* The Amended Complaint dropped the defamation and wrongful discharge claims. The following facts are alleged in Hetu's Amended Complaint and are, for purposes of considering the pending motion to dismiss, assumed to be true.

Hetu was employed in Charter's sales department and had completed the company's probationary employment period. Toward the end of June 2013, she suffered severe and debilitating anxiety and panic attacks. The attacks arose after Hetu had been scolded, belittled, unfairly singled out, verbally abused, and humiliated at work. *ECF 14* at ¶ 9. As a result, Hetu became physically ill and informed Defendants

she "would be off work because of her anxiety related illness." *Id.* at ¶¶ 11, 12.

Hetu contacted Charter's employee assistance program for help with her ongoing anxiety and panic attacks. Charter informed her that she was eligible for FMLA leave, and provided her with an application for such leave. *Id.* at ¶¶ 12–13. Hetu remained in regular contact with Lane, her human resource department contact, during the end of June and beginning of July while she was absent from work. She submitted her FMLA leave application on July 17, 2013.

On July 18, Lane informed Hetu that her application for FMLA leave was denied, and Hetu later learned it was denied because her paperwork did not indicate a serious health condition under FMLA requirements. *Id.* at ¶¶ 24–27. Lane explained that she did not qualify for FMLA leave because Hetu's counselor "indicated she had never treated [Hetu] prior to 7/17, that she wouldn't be treating [Hetu] again, she did not prescribe medication and she stated [Hetu] could perform [her] job duties." *Id.* at ¶ 27.

On July 26, Hetu filed an amended FMLA leave, along with an updated medical diagnosis from her mental health professional. Charter denied the amended application on July 31, because it

erroneously determined that "Ms. Hetu's therapist was not qualified as a 'health care provider' according to the provisions of the FMLA and/or Charter's employee health network." *Id.* at ¶ 36. The same day, July 31, 2013, Charter terminated Hetu's employment, informing her that she had "abandoned" her job. *Id.* at ¶¶ 38–39. Hetu tried to appeal the denial of her FMLA leave application, but Lane informed her, on August 8, 2013, that there was no grievance policy available to her.

After her termination, Hetu sought unemployment benefits from the Montana Department of Labor ("MDOL"). *Id.* at 45. Lane and Charter "engaged in a deliberate and deceitful exchange of untrue assertions, half-truths and misinformation with the [MDOL] relative to Ms. Hetu's claim for unemployment benefits" and withheld information from MDOL officials. *Id.* at ¶¶ 44–45. Specifically, Lane did not inform MDOL officials that Hetu "had been diagnosed with panic and anxiety attacks, and was ordered by her therapist to remain off work," or that she was in the process of applying for FMLA leave when she had been terminated. *Id.* at ¶ 45. Hetu was also denied access to short term disability benefits due to the denial of her FMLA leave.

## III. PARTIES' ARGUMENTS

Charter moves to dismiss all claims except Count Four (wrongful denial of FMLA leave) and Lane moves to dismiss all claims against her.

Defendants' motions to dismiss contend: (1) the WDEA is the sole and exclusive remedy for a wrongful discharge, regardless of whether a WDEA claim is pled, *ECF 16* at 4–5; (2) Charter's statements to MDOL regarding Hetu's unemployment compensation cannot be the basis for a fraud claim because they are privileged, *id.* at 9; and (3) all claims against Lane should be dismissed because the WDEA and FMLA do not provide for individual liability, nor has Hetu sufficiently pled facts indicating that Lane is an employer. *Id.* at 12–13.

In response, Hetu argues that the motion should be denied because the facts she relies upon do not "relate to or intertwine with the fact that Plaintiff was illegally terminated" from her employment. *ECF 22* at 6. Hetu argues that almost all of the facts specifically relate to the period before Charter's decision to terminate Hetu's employment. *Id.* at 6. Next, Hetu argues that the post-termination dealings with the MDOL and Hetu's attempts to obtain temporary disability benefits arise outside of the employer/employee relationship and should not be excluded by the Montana WDEA. *Id.* at 15–16. Finally, Hetu argues that the "Code of Federal Regulations strongly implies that Lane has individual culpability under the FMLA," and that Lane "fits the bill of an employer." *Id.* at 17–18.

## IV. <u>ANALYSIS</u>

Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A. **Claim Preemption under Montana's WDEA**

Montana's WDEA is "the exclusive remedy for a wrongful discharge from employment." MCA § 39–2–902. Except as provided in the Act, "no claim for discharge may arise from tort or express or implied contract." MCA § 39–2–913. But the WDEA does not bar all tort or contract claims arising in the employment context. It bars only those claims that "are inextricably intertwined with and based upon" termination from employment. *Kulm v. MT State University-Bozeman*, 948 P.2d 243, 255–256 (Mont. 1997) (citing *Beasley v. Semitool, Inc.*,

853 P.2d 84, 86 (Mont. 1993)); *see also Kneeland v. Luzenac Am., Inc.*, 961 P.2d 725, 729 (Mont. 1998) (MCA § 39–2–913 "bars only those tort and contract claims which are 'for discharge' "). Thus, the first issue the Court must address is whether Hetu's state tort claims are inextricably intertwined with and based upon her termination from employment. For the following reasons, the Court concludes that they are and that they must be dismissed.

### 1. Count One—Breach of Express and Implied Contract & Breach of the Covenant of Good Faith and Fair Dealing

Count One alleges that under an express and implied contract, "Charter owed Ms. Hetu the duty of good faith and fair dealing in abiding by and performing its promise of continued employment and also in assisting Ms. Hetu in applying for FMLA leave." *ECF 14* at ¶ 55. It further alleges that Defendants violated Hetu's expectation that she could apply for FMLA leave and "still continue her employment with the Charter sales department." *Id.* at ¶ 57. Hetu argues the Defendants "have caused Ms. Hetu to suffer past and future lost wages and benefits, past and future lost commissions, and future earning

capacity, from receiving unemployment benefits, and from receiving benefits under Plaintiff's short term disability policy." *Id.* at ¶ 53.

As is plain from the allegations quoted above, Count One is not independent of Hetu's termination from employment. The claim is based on expectations of continued employment and the damages Hetu alleges are primarily a result of her termination. *Id.* at ¶¶ 60–61. The claim is inextricably intertwined with and based upon Hetu's termination from employment. *See Kulm*, 948 P.2d at 256.

Hetu relies on *Beasley v. Semitool, Inc.*, in her assertion that the claim is separate from the discharge. But as the *Beasley* Court explained, when a claim for breach of the implied covenant of good faith and fair dealing includes a violation of a promise of continued employment, the claim is inextricably intertwined with a discharge from employment. *Beasley*, 853 P.2d at 86–87; *see also Solle v. W. States Ins. Agency, Inc.*, 999 P.2d 328, 331 (Mont. 2000). Here, the claim rests on a promise of continued employment, *ECF 14* at ¶¶ 55, 57, and thus is preempted by the WDEA. The Court recommends that Count One be dismissed.

### 2. Count Two and Three—Deceit and Fraud

Hetu's deceit and fraud claims are based on two sets of representations: (1) those made to Hetu regarding the FMLA application process and the status of her applications; and (2) those made to third parties regarding unemployment and disability benefits after Hetu's termination. *ECF 14 at ¶¶ 65–70, 80*.

The first set of statements cannot form the basis for Hetu's fraud and deceit claims because the handling of the FMLA applications are connected with her termination. Hetu made her first FMLA application on July 17, 2013, and her second July 26, 2013. *ECF 14 at ¶¶ 20, 33*. Her discharge came within two weeks of her first application and as a result of Charter's allegedly wrongful denial of FMLA leave requests. *Id. at ¶¶ 38-41*. Hetu alleges: "Instead of granting Ms. Hetu's request for FMLA leave or requesting additional information from Ms. Hetu's therapist, Defendants sent Plaintiff a letter informing her that she had abandoned her job." *Id. at ¶ 39*.

Hetu argues that Defendants deceived her with "the intent of having her alter her position with respect to future injury and/or the risk of future injury," *ECF 14 at ¶ 65*, but that future injury was her

discharge. Without the discharge she would have no injury. Thus, the claim is inextricably intertwined with Hetu's discharge.

The statements made in connection with claims for unemployment benefits are also intertwined with the underlying employment termination. *Daniels*, 2013 WL at *3. Hetu would not have been seeking unemployment benefits had she not been discharged from her job.[2]

Regarding the remaining representations alleged in Hetu's fraud claim, she has not claimed any damages independent of her termination. The Amended Complaint simply states there are "general and special damages to be proven at the time of trial." *ECF 14* at ¶ 88. But fraud requires that the Plaintiff plead enough facts to indicate "the hearer's consequent and proximate injury or damages caused by their reliance on the representation." *In re Estate of Kindsfather*, 108 P.3d at 490. Hetu has failed to plead any damages caused by Defendants' representations that demonstrate the claim is independent from Hetu's discharge. The WDEA preempts those claims for damages caused by a

---

[2] Additionally, the statements to MDOL were made in official proceedings authorized by law and are privileged. MCA § 27–1–804(2); *Daniels v. YRC, Inc.*, 2013 WL 449300, *3 n.3.

discharge. *Kulm*, 948 P.2d at 245. Thus, it is recommended that Count Two and Three be dismissed.

### 3. Count Five—Negligence

The Plaintiffs' negligence claim must properly allege four elements: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." *Hatch v. State Dept. of Highways*, 887 P.2d 729, 732 (Mont. 1994).

Hetu's claimed damages include "past and future lost wages, commissions, bonuses, fringe benefits, and future lost earning capacity." *ECF 14* at ¶¶ 114–116. She also alleges the Defendants' conduct prevented her "from receiving unemployment benefits from the state of Montana and short term disability benefits," and "damages in the form of past and future mental and emotional distress, humiliation, loss of course of established life, the loss of the ability to enjoy life, and other harms." *Id.* at ¶¶ 115–116.

Hetu's claim is inextricably intertwined with her discharge because the damages alleged in the Amended Complaint are a result of her discharge. *ECF 14* at ¶¶ 114–116. The WDEA preempts those claims for damages caused by a discharge. *Kulm*, 948 P.2d at 245; *see*

*also Bentley v. ConocoPhillips Pipeline Co.*, 2010 WL 1981324, *3 (D. Mont. May 14, 2010). The Court recommends that Count Five be dismissed.

B. **Claim Preemption under FMLA**

The FMLA provides a detailed remedial scheme for damages available to an eligible employee for violations under the act. Recoverable damages include: compensatory damages, interest, liquidated damages, attorney's fees and costs, and other equitable relief such as employment, reinstatement, and promotion. 28 U.S.C. § 2617. Most courts that have considered the question have concluded that FMLA's remedial scheme sets forth the exclusive remedies for an FMLA violation. *See, e.g., Kastor v. Cash Exp. of Tennessee, LLC*, 2015 WL 128051, *9 (W.D. Ky. Jan. 8, 2015); *McAllister v. Quality Mobile X-Ray Services, Inc.*, 2012 WL 3042972, *7 (M.D. Tenn. July 25, 2012); *Alvarez v. Hi-Temp Inc.*, 2004 WL 603489, *3 (N.D. Ill. Mar. 24, 2004); *Cavin v. Honda of Am. Mfg., Inc.*, 138 F. Supp. 2d 987, 994–998 (S.D. Ohio 2001). In finding conflict preemption, these courts have reasoned that while the FMLA does contain a savings clause that expressly allows states to provide greater rights for family and medical leave, it does not allow

states to provide additional remedies for FMLA violations. *Kastor*, 2015 WL at *9; *McAllister*, 2012 WL at *7.

The Court heard oral argument from parties on the issue whether the state law tort claims are preempted by the FMLA. The Defendants argued that the claims are barred by conflict preclusion because the FMLA, mirroring the Fair Labor Standards Act, only allows certain damages to be recovered for a violation of the act. Defendants argued that if state law remedies exceeded those provided by the FMLA then that conflict preempted state law tort claims. Defendants argue that Hetu is using the state law claims to augment damages, which is improper and in conflict with congressional intent.

Hetu responded that the claims should go forward. She argued that the deceit claim falls outside of the FMLA, entitling her to emotional distress damages. She also argued that the negligence claim should be allowed to go forward because if the deceit was not intentional then the conduct would constitute negligence.

The Court joins the majority of courts in holding that it would circumvent the remedial scheme Congress devised to accomplish the FMLA's objectives if a claimant could bring a state tort claim to rectify

an FMLA violation and thereby recover damages not recoverable under the FMLA. Here, each of Hetu's state tort claims are premised on violations of the FMLA. Count One, breach of express and implied contract and breach of the covenant of good faith and fair dealing, is based on "an express and implied contract of continued employment and also that the Company would assist [Hetu] with the process of applying for leave under the FMLA." *ECF 14* at ¶ 53. Count Two and Three, deceit and fraud, are based on statements and representations made regarding Hetu's FMLA leave application. *Id.* at ¶¶ 64–70, 74–87. Finally, Count Five, negligence, is based on a duty imposed under the FMLA. *Id.* at ¶¶ 106–115.

Counts One, Two, Three, and Five seek either punitive damages or damages for emotional distress—remedies not permitted under the FMLA. Hetu conceded in oral argument that the damages sought under the state tort claims are damages not available under the FMLA. Thus, the Court finds that Counts One, Two, Three, and Five are also preempted by the FMLA.

### C. <u>Motion to Dismiss of Lane from Count Four</u>

The FMLA prohibits an employer from interfering with "the

exercise of the employee's right to take leave." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2615(a)).  An employer under the FMLA includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I).

Defendants' motion seeks to dismiss Lane from Count Four, alleging that Hetu has not properly plead that "Lane is an 'employer' or that she actually violated the FMLA." *ECF 16* at 13.  Defendants also argue that individual liability is not possible under the FMLA.  *ECF 16* at 12–13.  But to survive a Rule 12(b)(6) motion, the Plaintiff only needs to plead enough "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  Hetu alleges that Lane was her only contact regarding her applications for FMLA leave, and Lane was the only person who reviewed the applications. *ECF 14* at ¶¶ 15, 24–27.  The Amended Complaint provides enough factual content to suggest Lane may have been a person who acted, "directly or indirectly, in the interest of an employer" towards Hetu—especially because the Amended Complaint alleges Lane is the only one who reviewed or read

Hetu's FMLA applications. *See Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408, 414–415 (3d Cir. 2012); *Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010). Thus, the Court recommends the motion to dismiss Lane from Count Four be denied.

### C. <u>Leave to Amend</u>

When a Rule 12(b)(6) motion is granted, leave to amend should be granted unless "the pleadings could not possibly be cured by the allegation of other facts." *See, e.g., Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). There are five factors to be considered in deciding whether to grant leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United Broth. of Carpenters and Joiners of Am. v. Bldg. and Const. Trades Dept., AFL-CIO*, 770 F.3d 834, 845 (9th Cir. 2014) (quoting *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)) (internal quotations omitted).

The factors weigh against Hetu in deciding whether to grant leave to amend. While there is no bad faith, there would be some prejudice to the other party and it would cause undue delay. When Charter initially

filed a Motion for Partial Dismissal (*ECF 2*), Hetu moved to amend the complaint "in an effort to address Defendant's pending Motion seeking partial dismissal of the Plaintiff's claims." *ECF 8* at 1–2. The Court granted leave to amend. *ECF 13*. Charter renewed its Motion for Partial Dismissal after Hetu filed her Amended Complaint. *ECF 15*. Consequently, Hetu has already amended her complaint once to address the issues presented in the motions and was additionally heard through oral argument. Hetu has suggested no facts that could be further alleged that would cure the identified defects in Counts 1, 2, 3, and 5 of the Amended Complaint. Thus, further amendment would be futile.

## V. **RECOMMENDATIONS**

For the reasons stated, IT IS RECOMMENDED that Defendant Charter's Motion for Partial Dismissal (*ECF 15*) be GRANTED and that Counts 1, 2, 3, and 5, against Charter be dismissed.

IT IS FURTHER RECOMMENDED that Defendant Lane's Motion to Dismiss (*ECF 15, 27*) be GRANTED as to Counts 1, 2, 3, and 5, but DENIED as to Count 4.

Thus, if the recommendation is accepted, only Count 4 will remain against Defendants Charter and Lane.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 6th day of April, 2015.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge